UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-160 (RBW) |
| | : | |
| v. | : | |
| | : | |
| RODGER ARNTT, II | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

**I.   BACKGROUND**

On September 6, 2006, the defendant was convicted by a jury of Enticing a Minor and Traveling Interstate with the Intent to have Sexual Contact with a Minor, in violation of 18 U.S.C. § § 2422(b) and 2423(b). The evidence at trial showed that on May 19, 2006, in Gaithersburg, Maryland, the defendant initiated three conversations with a person who he thought was a thirteen year-old child in Washington, D.C. The evidence showed that the "child" was in fact an undercover Metropolitan Police Department Detective, posing as a child. During the course of three hours, the defendant asked the "child" if she wanted to have sex with him, told her that he was disease free and that he was "fixed". The defendant then made arrangements to meet the "child" at the Rhode Island Metro station in Washington, D.C. The defendant told the "child" to make herself look older and suggested that she not wear panties. On that day, the defendant was arrested arriving at the Rhode Island Metro stop. Shortly after his arrest, the defendant told law enforcement that he knew he was talking to and intending to meet a child but that he was not intending to have sex with her.

1

**II.     SENTENCING CALCULATION**

    A     Statutory Maximums

Pursuant to Title 18, United States Code, Section 2423(b) carries a maximum sentence of 30 years. Title 18, United States Code, Section 2422(b) carries a minimum sentence of 5 years and a maximum penalty of thirty years in prison. Both offenses carry a fine of $ 250,000, and a maximum term of supervised release of thirty years.

    B.     Sentencing Guidelines Calculation

The Guidelines calculation utilized in the Presentence Report ("PSR") calculates the defendant's total offense level at 28. See PSR ¶ 21. (This calculation contemplates a two level enhancement for obstruction of justice.) The PSR calculates the defendant's criminal history as Category I. See PSR ¶ 24. The guideline range for the defendant is calculated at 78 to 97 months. For the reasons set forth, infra Section III of this Memorandum, the government respectfully recommends that the Court sentence the defendant at the top of the Guidelines range calculated in the PSR and impose 97 months in prison plus supervised release for a period of 30 years.

**III.    GOVERNMENT'S RECOMMENDATIONS**

    A.     Acceptance of Responsibility

The government agrees with the PSR¶ 11 that the defendant's base offense level should not be decreased by three points pursuant to Section 3E1.1 of the Sentencing Guidelines since

defendant went to trial.

  B.  Obstruction of Justice

  The government agrees with the presentence report that the offense level should be increased by 2 points based on obstruction of justice. Indeed, at the time of his arrest, the defendant told the police that he **knew it was a child** but that he didn't intend to have sex with her. Rather, he was going to tell her that he had made a mistake, and send her on her way. In contrast, at the time of trial, the defendant testified that **he did not think the person with whom he was chatting was a child.** Thus, it is the position of undersigned counsel, that defendant should receive an adjustment of 2 points for obstruction of justice.

  B.  Application of the Federal Guidelines post-Booker

  It is the government's position that the Court should impose a sentence within the guidelines range. In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in

the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at 769.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to

criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence.  See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions  . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court.  Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences

5

be based on the offender's actual conduct and history.  See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").  Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

     Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines.  Such a sentence will now be reviewed instead for its "reasonableness."  See Booker, 125 S. Ct. at 764.  Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable.  Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review.  See 18 U.S.C. Section

3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for

similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Federal Guidelines range calculated in the Presentence Report, in addition to the imposition of sentence for the D.C. offenses.

C.    Basis for Government's Sentencing Recommendation

The government is requesting a sentence at the top of the defendant's guidelines range. Such a sentence is more than supported by: (1) the facts surrounding defendant's offense, (2) the potential risk of danger for children had the child been real and (3) the defendant's absolute failure to admit guilt in this case.

Defendant's conduct in this case makes clear that he is deviant and dangerous. Upon being told by the "child" that she was 13 years-old, a law-abiding person would have stopped chatting with the child and would have never turned back. This man, not only continued talking to her, but asked her very detailed questions about her family, her life, her guardians: where were they, when would they be home, would she be able to get on a metro at night and meet him in a hotel in Maryland, would she be able to borrow money from someone to get to him, would she be able to look older, would she be able to meet him without wearing panties and whether she had ever had sex before. The defendant committed this crime in a setting that he thought was behind closed doors and private. He thought that he was talking to a child and that he could get away with anything since he thought that the child was powerless and young. These are some of things that Rodger Arntt said to the "child", during the course of the chat, while he thought

nobody was listening:

> **too bad you are so young...I like blondes and you seem smart...thinking you are trying to get me in trouble...you need to find a boy your age...and with smaller tool so not to hurt you...I would get you in trouble...what is the wildest thing you ever done?...you wouldn't know how to hold it even...you've never touched one...I have a large thing... I enjoy oral...I love to kiss and lick...can't have babies...**

After having this conversation with a child, the defendant then left the comfort of his hotel room, took a bus to the train, took a train to D.C. to ultimately meet this child and to have sex with her. Clearly, this conduct needs to be punished severely.

This behavior was devious and reckless. The thought that the child could have been real is frightening.

Accordingly, the government believes that a prison term of 97 months plus the maximum amount of years for supervised release.

IV. **CONCLUSION**

Wherefore, the government respectfully requests that the Court sentence the defendant to a prison term of 97 months plus 30 years of supervised release.

Respectfully submitted,

JEFFERY A . TAYLOR
United States Attorney

Bar No. 498610

_____
JULIEANNE HIMELSTEIN
Assistant United States Attorney
Major Crimes Section, Mass.  Bar No. 417-136
555 4th Street, N.W.  Room 4832
Washington, DC 20001
Phone: 514-8203
Fax: 353-9414

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, this ___ day of January, 2007.

_____
JULIEANNE  HIMELSTEIN
Assistant United States Attorney